### 2007 WY 206

**SUNSHINE CUSTOM PAINTS & BODY, INC., a Wyoming corporation; Cyclone Drilling, Inc., a Wyoming corporation; and M & J Services, Inc., a Wyoming corporation, Appellants (Plaintiffs),**

v.

**SOUTH DOUGLAS HIGHWAY WATER & SEWER DISTRICT, a governmental unit of the State of Wyoming; and The City of Gillette, Wyoming, a Municipal Corporation and City of the First Class, Appellees (Defendants).**

**No. S-07-0017.**

Supreme Court of Wyoming.

Dec. 20, 2007.

Representing Appellants: Tad T. Daly and Matthew R. Sorenson of Daly Law Associates, LLC, Gillette, Wyoming.

Representing Appellee South Douglas Highway Water & Sewer District: James L. Edwards of Stevens, Edwards, Hallock & Carpenter, P.C., Gillette, Wyoming.

Representing Appellee City of Gillette: Charles W. Anderson, Gillette City Attorney's Office; Judith Studer of Schwartz, Bon, Walker & Studer, LLC, Casper, Wyoming.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

KITE, Justice.

[¶ 1] Sunshine Custom Paints & Body, Inc., Cyclone Drilling, Inc. (Cyclone), and M & J Services, Inc. (hereinafter referred to collectively as "the Landowners") appeal from the district court's order granting summary judgment in favor of South Douglas Highway Water & Sewer District (Sewer District) and the City of Gillette (the City) on their claim that the City did not have the right to construct a sewer trunk line beneath a road adjacent to their property. Cyclone also appeals from the order granting the City summary judgment on its counterclaim for damages it suffered when Cyclone interrupted the sewer line construction project.

[¶ 2] We affirm.

## ISSUES

[¶ 3] The Landowners present the following issues on appeal:

A. Did the district court err in finding the language of the de[d]ication deed superior to the plain language of the plat?

B. Did the district court err in finding the term "public use" granted subsurface rights as well as surface rights to the public?

C. Did the district court err in granting the defendant City of Gillette's motion for summary judgment on its counterclaim?

The City and the Sewer District rephrase the issues as:

A. Do appellants have standing to object to the public use of a roadway? Specifically, can appellants claim a property interest in Mohan Road that was dedicated by deed to the public based upon a subdivision plat that does not cover that part of Mohan Road?

B. Does the term "public use" permit a municipality to construct a sewer trunk line under the roadway surface?

C. Does taking the law into your own hands based on an unreasonable belief as to your property rights constitute a defense to the tort of intentional interference with a contract?

## FACTS

[¶ 4] The Landowners own lots and maintain businesses in the Mohan Subdivision in Campbell County, Wyoming. Their lots abut Mohan Road. The Mohan Subdivision was created by the filing of a plat on March 1,

1977. The plat contained the following statement:

> [T]he undersigned owners and proprietors ... do hereby dedicate and convey to and for public use forever hereafter the streets as are laid out and designated on this plat, and do also preserve easements for the installation and maintenance of utilities and for irrigation and drainage facilities as are laid out and designated on this plat.

Mohan Road was depicted on the plat. A few minutes later, the developer filed a dedication deed, which stated:

> Grantor ... hereby dedicates to the public as Grantee the following described real estate ... hereby releasing and waiving all rights under and by virtue of the homestead exemption laws of the state, to wit [legal description omitted]. Subject to all reservation, easements and right of record.

The dedication deed pertained to the northern portion of Mohan Road.

[¶ 5] The City contracted with Western Municipal Construction of Wyoming, Inc. (Western) to construct a sewer trunk line to service several subdivisions. Western began construction of the line, which ran beneath Mohan Road, in December 2004. The Landowners objected to the construction, claiming the City did not have the right to place the sewer line beneath the road. They were also apparently dissatisfied with the City's efforts to keep the road accessible to their businesses during the construction. Unable to resolve their differences, Cyclone placed a large oil field pump house on Mohan Road in the path of the construction on February 24, 2005, interrupting the work until March 2.

[¶ 6] On March 14, 2005, the Landowners filed a complaint in the district court articulating several causes of action against the City and the Sewer District. The City counterclaimed for the damages it suffered as a result of Cyclone's actions on February 24. The City and Sewer District filed motions to dismiss and the Landowners filed a motion for a partial summary judgment. The district court converted the City's motion to dismiss to a motion for summary judgment and granted summary judgment in favor of the City and Sewer District. The district court also granted a summary judgment in favor of the City on its counterclaim. The Landowners appealed.

## DISCUSSION

[¶ 7] We are asked to review two summary judgment rulings in favor of the appellees. Summary judgment motions are governed by W.R.C.P. 56(c):

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

[¶ 8] This Court reviews summary judgment rulings *de novo*, using the same materials and following the same standards as the district court. The record is reviewed from the vantage point most favorable to the party who opposed the motion, and we give that party the benefit of all favorable inferences that may fairly be drawn from the record. *Cook v. Shoshone First Bank*, 2006 WY 13, ¶ 11, 126 P.3d 886, 889 (Wyo.2006); *Garcia v. Lawson*, 928 P.2d 1164, 1166 (Wyo. 1996).

[¶ 9] The summary judgment movant has the initial burden of establishing a *prima facie* case with admissible evidence; once this is accomplished, the burden shifts to the opposing party to present specific facts showing that there is a genuine issue of material fact. *Boehm v. Cody Country Chamber of Commerce*, 748 P.2d 704, 710 (Wyo.1987); *Gennings v. First Nat'l Bank of Thermopolis*, 654 P.2d 154, 156 (Wyo.1982).

### A. *Status of Mohan Road*

[¶ 10] Several of the issues the parties raise pertain to the Landowners' property rights in Mohan Road. Because the issues are related, we will consider them together, starting with the basic rules pertaining to public use conveyances. Property may be dedicated to the public and dedication may be accomplished directly by deed or by recording a plat. *City of Evanston v. Robinson*, 702 P.2d 1283, 1289 (Wyo.1985).

Wyo. Stat. Ann. § 34–12–104 (LexisNexis 2007) articulates the effect of recording a plat:

> The acknowledgment and recording of such plat, is equivalent to a deed in fee simple of such portion of the premises platted as is on such plat set apart for streets, or other public use, or is thereon dedicated to charitable, religious or educational purposes.

[¶ 11] The Landowners maintain that the plat and dedication deed covered the same property and, because the plat was filed first, the deed is subject to the reservations included in the plat, including a utility easement. They claim these circumstances raise a genuine issue of material fact as to the grantor's intent. The record includes an affidavit signed by Don Oakley, a professional land surveyor. Mr. Oakley reviewed the dedication deed and the plat and stated that the northern part of Mohan Road was conveyed to the public in the dedication deed and was not included in the legal description of the Mohan Subdivision created by the plat. The map attached to his affidavit indicates the southern part of the road was within the subdivision and, consequently, dedicated to the public in the plat. Mr. Oakley also stated: "The area which was disturbed by the excavation for the sewer line which is the subject of Plaintiffs' complaint is located in the area described in the Dedication Deed...." Mr. Oakley's affidavit was not disputed and, therefore, conclusively established that the properties described in the dedication deed and the plat did not overlap. Consequently, the Landowners' argument that the plat takes precedence over the dedication deed misses the point because the two documents pertain to different properties.

[¶ 12] The City and Sewer District claim the Landowners do not have standing to contest the appellees' use of the portion of Mohan Road adjacent to the Landowners' businesses because it was unequivocally conveyed to the public by the dedication deed. In *Ruby Drilling Co., Inc. v. Billingsly,* 660 P.2d 377 (Wyo.1983), this Court considered a case with facts similar to the case at bar. Ruby installed a water line in the right of way of a roadway easement dedicated to the public in a subdivision plat. The appellees owned property in the subdivision adjacent to the roadway and sued Ruby for trespass. *Id.* at 378–79. This Court held that the entire right of way had been dedicated to the public and, "[t]his being so, the appellees as owners of lots in the subdivision only have a right to the use of the [roadway] for ingress and egress to their property; they have no possessory interest in that area sufficient to provide the underpinning for an action in trespass." *Id.* at 381.

[¶ 13] In *Owsley v. Robinson,* 2003 WY 33, ¶ 16, 65 P.3d 374, 378 (Wyo.2003), we stated:

> [I]f the easements were set aside for public use, the public authority would hold title to the easements in trust for the public's benefit and the [individual landowners] would have no individual possessory interest in the easements and thus no standing to contest [another's] use of [the][e]asement.

[¶ 14] According to Mr. Oakley's affidavit, the area disturbed by the sewer line was in the northerly portion of Mohan Road which was covered by the dedication deed. Under the teachings of *Ruby Drilling* and *Owsley,* since the northern portion of the road was unequivocally dedicated to the public in the dedication deed, the Landowners would not have a possessory interest in it and, therefore, no standing to contest the City's use of the roadway for a sewer line.

[¶ 15] Our ruling that the Landowners whose property abuts the northerly portion of Mohan Road do not have standing would seem to be dispositive. However, the record indicates the owner of Lot 9 may have a cognizable claim because its land does not abut the portion of Mohan Road covered by the dedication deed, but instead abuts the southern portion of the road which was dedicated in the subdivision plat. The map attached to Mr. Oakley's affidavit shows that Lot 9 is not adjacent to the portion of Mohan Road that was dedicated by the deed. An affidavit filed by Mark Lenti stated that he was the controlling shareholder of M & J Services, Inc. and that company owns Lot 6 and a percentage of Lot 9. The sewer line apparently continued down Mohan Road in

the area covered by the plat. Because the section of Mohan Road adjacent to Lot 9 was dedicated in the plat rather than by the dedication deed, and M & J Services claimed the subdivision had an exclusive utility easement pursuant to dedication language in the plat, it has standing to contest the City's use of the roadway. We will, therefore, address the effect of the plat on this case.

[¶ 16] In the subdivision plat, the owner dedicated "to and for public use forever hereafter the streets as are laid out and designated on this plat, and do also preserve easements for the installation and maintenance of utilities and for irrigation and drainage facilities as are laid out and designated on this plat." The Landowners argue this dedication only gave the public the right to use the road for ingress and egress. They claim the plat language indicates the grantor intended to reserve utility easements for the subdivision and the City did not have the right to install the sewer line beneath the platted portion of Mohan Road.

[¶ 17] When streets are dedicated to the public without restriction, the dedication "embraces every reasonable method of travel over, under and along the right of way." *Box L Corp. v. Teton County*, 2004 WY 75, ¶ 17, 92 P.3d 811, 817 (Wyo.2004). In *Robinson*, we stated that the dedication of streets includes the surface and "so much of the subsurface as is necessary for street construction and municipal services." *Robinson*, 702 P.2d at 1289.

[¶ 18] The Landowners would have us interpret the plat as reserving to the subdivision owners the exclusive right to use the road area for utilities. The plain language of the dedication does not support their interpretation. The plat dedicates the street area to the public. When such a dedication is made without restriction, it includes the right to use the subsurface for the provision of municipal services, including utilities. The plat "preserved" easements for utilities, etc. Use of the term "preserve" is somewhat unusual. Typically, if a grantor intends to keep some property interest when conveying the property, he "reserves" that interest. We need not, however, concern ourselves with the precise meaning of the "preserve"

language because even if we interpret the dedication as reserving a utility easement to the subdivision, it does not preclude the public from using the street area for utilities. When an easement "does not clearly indicate it is exclusive to the dominant owner, the owner of the servient estate retains the right to use the easement area." *Owsley*, ¶ 14, 65 P.3d at 377. The plat does not state that the right to use the property for utilities, etc. was exclusive to the subdivision. Thus, even if the subdivision reserved a utility easement, it was not exclusive and the City would have the right to install utilities pursuant to the street dedication so long as it did not interfere with the subdivision's use of the easement.

[¶ 19] The district court properly granted summary judgment in favor of the City and Sewer District on the Landowners' claim that the City improperly used Mohan Road for installation of the sewer line.

**B. *Intentional Interference with Contract***

[¶ 20] The City asserted a counterclaim for intentional interference with a contract against the Landowners for delaying the construction of the sewer line by placing a pump house in the path of the construction. A representative of Cyclone averred that it placed the pump house and the other plaintiffs were not involved. The district court ruled that Cyclone, alone, was responsible for the construction delay and granted the City's motion for summary judgment for the extra amount it paid Western because of the delay.

[¶ 21] This Court has adopted the definition of the tort of intentional interference with a contract set out in the Restatement (Second) of Torts, § 766 (1979):

"'One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract.'" *Davenport v. Epperly*, 744 P.2d 1110, 1111

(Wyo.1987), quoting *Toltec Watershed Improvement District v. Johnston,* 717 P.2d 808, 813–814 (Wyo.1986).

*First Wyoming Bank, Casper, v. Mudge,* 748 P.2d 713, 715 (Wyo.1988). *See also, Birt v. Wells Fargo Home Mortgage Inc.,* 2003 WY 102, ¶ 71, 75 P.3d 640, 662–63 (Wyo.2003). The elements of a claim of intentional interference with a contract are: (1) the existence of a contract between the plaintiff and a third party; (2) the defendant's knowledge of the contract; (3) the defendant's intentional and improper interference with the contract which induced or caused a breach; and (4) resulting damages. *Mudge,* 748 P.2d at 715. *See also, Gore v. Sherard,* 2002 WY 114, ¶ 12, 50 P.3d 705, 710 (Wyo.2002); *Texas West Oil and Gas Corp. v. Fitzgerald,* 726 P.2d 1056, 1062 (1986); *Toltec Watershed Improvement District v. Johnston,* 717 P.2d at 813–814.

■■■ [¶ 22] On appeal, Cyclone claims that the evidence was contested on the third element of the tort and, consequently, summary judgment was not warranted. In particular, it argues that its action was justified and proper because it was seeking to protect its asserted property interest in Mohan Road. Cyclone maintains that summary judgment was improper because genuine questions of material fact existed concerning the reasonableness of its action and the district court should have analyzed the factors identified in § 766 in determining whether its actions were improper or justified. Those factors are:

(a) the nature of the actor's conduct,

(b) the actor's motive,

(c) the interests of the other with which the actor's conduct interferes,

(d) the interests sought to be advanced by the actor,

(e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other,

(f) the proximity or remoteness of the actor's conduct to the interference and

(g) the relations between the parties.

*Toltec,* 717 P.2d at 814; *Mudge,* 748 P.2d at 716–17.

■■■ [¶ 23] This Court recognizes Restatement (Second) of Torts § 773 (1979),

which states that "one who interferes with a contract by asserting a bona fide claim in good faith is not liable for tortious interference with contractual relations." *Mudge,* 748 P.2d at 717. *See also, Toltec,* 717 P.2d at 814. Section 773 states:

One who, by asserting in good faith a legally protected interest of his own or threatening in good faith to protect the interest by appropriate means, intentionally causes a third person not to perform an existing contract or enter into a prospective contractual relation with another does not interfere improperly with the other's relation if the actor believes that his interest may otherwise be impaired or destroyed by the performance of the contract or transaction.

[¶ 24] The district court found that the City had demonstrated that there was no disputed issues of fact as to Cyclone's interference and it was improper as a matter of law:

Cyclone's placement of the pump house to stop construction of the trunk line was improper. Cyclone took the law into its own hands and exercised vigilante justice. Other appropriate actions were available to Cyclone to exercise or enforce its rights. Wyoming law provides avenues to protect one's rights. It doesn't matter that Cyclone's motive was to force the City and Western to comply with prior agreements. It doesn't matter that Cyclone believed it was protecting its economic interest. Cyclone's actions were inappropriate. Cyclone's actions interfered with and negatively impacted other parties' interests.

Placing a large piece of oil field equipment in front of the construction site and blocking construction equipment was not the appropriate action for Cyclone to take, no matter its reasoning. Wyoming does not condone vigilante justice. Cyclone's actions were improper as a matter of law.

The district court continued:

Comment a to § 773 clarifies the rule. It states: "The rule is of narrow scope and protects the actor only when (1) he has a legally protected interest, and (2) in good faith asserts or threatens to protect it, and

**405**

(3) the threat is to protect it by appropriate means." Restatement (Second) of Torts § 773, cmt. a.

. . . .

Cyclone's ownership interest in Mohan Road was a legally protected interest. Cyclone had justification to protect its interest. But protection of that interest must be by "appropriate means." Placing a pump house in front of the construction site and equipment in order to stop the construction is not appropriate means. Other appropriate options were available to Cyclone. Cyclone was not justified in the way it attempted to protect its interest in Mohan Road.

[¶ 25] The district court's ruling is supported by the record. It is undisputed that Cyclone placed the pump house on Mohan Road in order to delay the sewer line construction. There was no showing that Cyclone had the legal right to place a piece of equipment on the road. Even if Cyclone's asserted property interest in the road was legitimate, it did not have a right to block the construction by placing a piece of equipment in the road.

[¶ 26] Moreover, Cyclone stated in its response to the City's interrogatories that:

> The placement was only done with the intent of persuading the City of Gillette and its contractor to fulfill previous commitments about keeping Mohan Road open to Highway 59 so as not to interfere with individual businesses located on Mohan Road.
>
> [Cyclone] was willing to move the equipment once the City and/or contractor fulfilled commitments made in meetings of November and December 2004 to keep the road clean and open to Highway 59.

Thus, Cyclone admitted that it placed the equipment in the road to force the City to comply with its promise to keep the road open during the construction. This motivation had nothing to do with Cyclone's asserted property interest in the road. Thus, the undisputed facts showed that Cyclone's action was improper and a weighing of the factors set out in *Toltec* and § 766 was not required. The district court properly held, as a matter of law, Cyclone's interference with the City's contract with Western was improper.

[¶ 27] Affirmed.